Green Tree Servicing LLC
fka Conseco Finance
MHD Bankruptcy Department
**POST PETITION WORKSHEET**

| Date Due | Amounts Due P & I | Insurance | Escrow | Total | Date Pmts. Received | Amt Received | Difference | Arrears Pmts |
|---|---|---|---|---|---|---|---|---|
| 7/15/05 | 477.98 | 98.25 | 0.00 | 576.23 | 8/17/2005 | 576.45 | -0.22 | 0.00 |
| 8/15/05 | 477.98 | 98.25 | 0.00 | 576.23 | 9/16/2005 | 477.00 | 99.23 | 0.00 |
| 9/15/05 | 477.98 | 98.25 | 0.00 | 576.23 | 9/26/2005 | 99.45 | 476.78 | 0.00 |
| 10/15/05 | 477.98 | 98.25 | 0.00 | 576.23 | | 0.00 | 576.23 | 0.00 |
| | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 |
| | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 |
| | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 |
| | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 |
| | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 |
| | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 |
| | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 |
| | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 |
| | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 |
| | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 0.00 |
| Total due | 1911.92 | 393.00 | 0.00 | 2304.92 | **Amount Paid** | 1152.90 | 1152.02 | 0.00 |

**Amount Due** 1152.02

| Pre/Post System Check | |
|---|---|
| Pre Arrears amount (w/o misc) | 1765.42 |
| Post Petition status | 1152.02 |
| Amount should equal System 4 | 2917.44 |

| Pre Arrs Balance Due | 1819.42 |
|---|---|

System matches as of 10/21/05

Green Tree Financial Corporation, 1987, 1988.

10-01-101 (6/99) MH-RIC

**ALABAMA**

## MANUFACTURED HOME RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT (CONV. - FHA - VA) (SI)

Date 1/8/2000

MOYE, ESPONITA

BUYER: BEDLEY, KEVIN A., 65 BEAVER LANE, COY, AL 36726

SELLER: C & C MANUFACTURED HOMES, INC., 100 MONTGOMERY HIGHWAY, GREENVILLE, AL 35037

ASSIGNEE: CONSECO FINANCE CORP-ALABAMA, 324 INTERSTATE PARK DRIVE, MONTGOMERY, AL 36109

### FEDERAL TRUTH-IN-LENDING ACT DISCLOSURES

| ANNUAL PERCENTAGE RATE (The cost of my credit as a yearly rate.) | FINANCE CHARGE (The dollar amount the credit will cost me.) | Amount Financed (The amount of credit provided to me or on my behalf.) | Total of Payments (The amount I will have paid after I have made all payments as scheduled.) | Total Sale Price (The total cost of my purchase on credit, including my down payment of $ 7350.00) |
|---|---|---|---|---|
| 11.49 % | $ 156251.30 | $ 60983.50 | $ 217234.80 | $ 224584.80 |

My payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 360 | 603.43 | Monthly beginning 2/15/2000 |

**SECURITY:** I am giving a security interest in:
XX The goods or property being purchased. N/A Other (Describe): N/A
**FILING FEES:** $ 30.00 . **LATE CHARGE:** If a payment is more than 15 days late, I will be charged
$5.00 or 5.0% of the unpaid amount of the installment, whichever is less
**PREPAYMENT:** If I pay off early, I N/A may XX will not be charged a prepayment penalty.
**ASSUMPTION:** Someone buying my home may, subject to conditions, be allowed to assume the remainder of the Contract on the original terms.
See the Contract document below for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

### ITEMIZATION OF THE AMOUNT FINANCED

| | | |
|---|---|---|
| 1. Cash Sale Price (including Taxes of) | $ 1323.50 | $ 67498.50 |
| 2. Gross Trade-in | $ 5845.00 | |
| Less Amount Owed on Trade-in | $ .00 | |
| Net Trade-in | $ 5845.00 | |
| Description: Make STATESMAN | | |
| Year 1972 Size 65 X 12 | | |
| 3. Cash Down Payment .... | $ 1505.00 | |
| 4. Total Down Payment | | - $ 7350.00 |
| 5. Unpaid Balance of Cash Sale Price (1 - 4) | | + $ 60148.50 |
| 6. Paid to Public Officials | | + $ 30.00 |
| 7. *Paid to Insurance Companies | | + $ 805.00 |
| 8. Paid to Appraiser | | + $ .00 |
| 9. *a. Paid to CREDITOR FOR PTS/ORIG. FEE | | + $ 3659.01 |
| b. Paid to | | + $ .00 |
| c. Paid to | | + $ .00 |
| d. Paid to | | + $ .00 |
| e. Paid to | | + $ .00 |
| f. Paid to | | + $ .00 |
| g. Paid to | | + $ .00 |
| 10. Principal Balance (5 + 6 + 7 + 8 + 9 a.-g.) | | + $ 64662.51 |
| 11. Prepaid Finance Charges | | - $ 3659.01 |
| 12. Amount Financed (10 - 11) | | $ 60983.50 |

*Seller and/or Assignee and/or their affiliates may receive commissions or other compensation from businesses to whom these charges are due.

### PHYSICAL DAMAGE INSURANCE

Physical Damage Insurance is required but I may obtain it from anyone I want that is acceptable to you. If I get the insurance checked below from you or through you, I will pay you

$ 805.00 for insurance protection for a term of 01 years.
X Comprehensive ($ 250.00 deductible)
N/A Flood
X Liability
N/A Other
N/A Vendor's Single Interest

### OPTIONAL CREDIT LIFE AND DISABILITY INSURANCE

Credit Life and Disability Insurance are not required to obtain credit and will not be provided unless I sign and agree to pay the additional cost.

The term of this insurance is 00 years.

| | | |
|---|---|---|
| N/A Single Credit Life Insurance | $ | .00 |
| N/A Joint Credit Life Insurance | $ | .00 |
| N/A Single Credit Disability Insurance | $ | .00 |
| Total | $ | .00 |

X
Signature of Buyer(s) Insured          Date

### CONTRACT AND SECURITY AGREEMENT

1. **DEFINITIONS:** "I", "me", "my" means the Buyer(s). "You", "your" means the Seller and also the Assignee or their affiliates (after the Contract is assigned by Seller). The "parties" means the Buyer and Seller, together. "Manufactured Home" means the manufactured home and any other property described on page 1/0 contract.

K.A.B.    RM

© Green Tree Financial Corporation, 1997, 1998.

| NEW OR USED | YEAR AND MAKE | Manufactured Home MODEL | SERIAL NUMBER | SIZE |
|---|---|---|---|---|
| N | 1999 HOMESTEAD | | HMST14620  GA | 32 X 80 |

X Stove    X Refrigerator    ___ Washer    ___ Dryer    X Air Conditioner    ___ Wheels/Axles

**Other (Describe)**

**PURCHASE:** I have the option of buying the Manufactured Home for the cash price or buying on credit. The cash price is shown on page 1 as the "Cash Sale Price", and the credit price is shown on page 1 as the "Total Sale Price". I choose to buy on credit. Assignee and others may compensate Seller and/or its affiliates for arranging the financing, any insurance, any warranties and any other items or services sold with the Manufactured Home.

**1. SECURITY INTEREST:** I give you a security interest under the applicable certificate of title law or Uniform Commercial Code in the Manufactured Home and any property added or attached to it, to secure my obligation under this Contract. I also grant you a security interest in any interest I may have in proceeds and premium refunds of any insurance and service contracts purchased with this Contract. I agree to execute any application for certificate of title or ownership, financing statement or other document necessary to perfect your security interest in the Manufactured Home. To the extent, if any, that any Contract (whether or not accompanied by any one or more original) constitutes chattel paper (as such term is defined in the Uniform Commercial Code in effect in the applicable jurisdiction) no security interest in any Contract may be created in any document(s) other than the original.

**3. PAYMENTS AND LATE CHARGE:** I will pay you the amount shown as the "Total of Payments" according to the payment schedule shown on page 1. I also agree to pay a late charge for late payment as shown on page 1.

**5. NSF FEE:** If any payment instrument which I submit to you is returned unpaid for any reason, I will pay you a fee of _$26.00_

**5. PREPAYMENT: I MAY PREPAY THIS LOAN IN WHOLE OR IN PART AT ANY TIME. I WILL NOT PAY A PENALTY UPON PREPAYMENT UNLESS OTHERWISE STATED IN THE NEXT SENTENCE. IF I PREPAY IN FULL WITHIN** _N/A_ **MONTHS OF THE DATE OF THIS NOTE, I WILL PAY YOU A PENALTY OF** _N/A_

_N/A_ **. PARTIAL PREPAYMENTS WILL NOT EXCUSE OR REDUCE ANY LATER SCHEDULED PAYMENT UNTIL THIS NOTE IS PAID IN FULL.**

**7. SIMPLE INTEREST CONTRACT:** This is a simple interest contract. The interest rate is _10.75% per annum_

Interest will accrue upon the unpaid principal balance outstanding from time to time until paid in full. The Finance Charge, Total of Payments and Payment Schedule were computed based on the assumption that payment will be made on the dates scheduled for payment. Early payments will reduce my final payment. Late payments will increase my final payment. My final payment will be equal to all unpaid sums due under this Contract. My promise requires me to pay the final payment on the date due even if the amount of the final payment differs from the amount of the final payment disclosed.

**8. NO WARRANTIES:** I agree that there are no warranties of any type covering the Manufactured Home. I am buying the Manufactured Home AS IS and WITH ALL FAULTS and THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE MANUFACTURED HOME IS WITH ME. I agree that any implied warranty of merchantability and any implied warranty of fitness for a particular purpose are specifically excluded and do not cover the Manufactured Home. This No Warranties provision does not apply to the extent that any law prohibits it and it does not cover any separate written warranties.

**9. PROTECTION OF THE MANUFACTURED HOME:** I will: (a) keep the Manufactured Home in good condition and not commit waste; (b) pay all taxes, charges and lot rent due for the Manufactured Home and the real estate it is located on; (c) not move, use illegally, sell, lease or otherwise transfer the Manufactured Home; (d) not attach the Manufactured Home to any real estate and the Manufactured Home will always be treated as personal property unless you consent in writing and state law permits such contrary treatment; and (e) not let anybody else have any interest in the Manufactured Home.

**10. INSURANCE:** I will keep the Manufactured Home insured against such risks and in such amounts as you may reasonably require with an insurance company satisfactory to you. I will arrange for you to be named as loss payee on the policy. I agree to provide you written evidence of insurance as requested by you from time to time. If you finance the purchase of any such insurance for me, I will repay you for the cost of that insurance, plus interest up to the contract rate of interest. I authorize you to furnish account data to a licensed insurance agent of your choice so such agent may solicit the purchase of credit, property, warranty or other insurance from me. I agree that the insurance company may make any payments due under the policy directly to you, and I direct the insurance company to do so. You may do whatever you think is necessary to be sure that any proceeds of the insurance will be used to repair the Manufactured Home or pay off this Contract. I give you a power of attorney (which I cannot cancel) so that you may do whatever you need to in order to collect the insurance proceeds. If I fail to obtain, maintain or pay for the required insurance, or if I fail to arrange for you to be named as loss payee, you may treat that as a default of my obligations under this Contract, and you may (but are not required to) purchase such insurance in an amount allowed by law. I will immediately pay you for any amounts you spend in purchasing the insurance, plus interest up to the contract rate of interest or, at your option, pay you over time as a workout of the obligation. If I owe you for any insurance (or for late charges, attorneys' fees or collection costs), I understand that I owe an additional sum for these debts beyond my monthly principal and interest payment. My monthly payment will therefore be greater than that stated on page 1 until such additional debts are paid in full.

**11. DEFAULT:** I will be in default if: (i) I do not make a payment on time; or (ii) I do not keep any of my other promises under this Contract; or (iii) I file a case, or someone else files a case against me, under the United States Bankruptcy Code; or (iv) you feel in good faith that the Manufactured Home is in danger or that I will not be able to continue my payments. The default described under (iv) does not apply if this Contract is guaranteed by the Veteran's Administration. You will give me notice of the default except when I voluntarily surrender or abandon the Manufactured Home. I will have the right to cure the default during the notice period. If I do not cure the default, you may do either or both of the following: (a) Acceleration: You can require me to immediately pay you the entire remaining balance of this Contract; and/or (b) Repossession: You can repossess the Manufactured Home. Once you get possession of the Manufactured Home you may sell it. If the amount from the sale, after expenses, is less than what I owe you, I will pay you the difference. If there is any property left in the Manufactured Home when you repossess, you may dispose of it as provided by law. If I default, you can do whatever is necessary to correct my default. If you spend money to correct my default, I will pay you back immediately with interest at the contract rate of interest.

**12. NOTICE:** Except for any notice required under applicable law to be given in another manner, (a) any notice to me provided for in this Contract shall be given by mailing such notice ...

GT-10-01-101 (8/98)   (page 3 of 4)

ch other address as I may designate by notice to you in writing, and (b) any notice to you shall be given in writing by certified return receipt requested, to your address stated herein or to such other address as you may designate by notice to me in writing.

**ATTORNEY'S FEES:** If after I default you hire an attorney who is not a salaried employee to collect what I owe under this Contract or get possession of the Manufactured Home or to enforce my agreements herein, I will pay you your reasonable attorney's fees, costs and out-of-pocket expenses at the maximum allowed by law.

**MISCELLANEOUS PROVISIONS:** This written Contract is the only agreement that covers my purchase of the property. This Contract can only be modified or amended, or provisions in it waived (given up), by a written modification to this Contract signed by you. You can decide not to use or enforce any of your rights under this Contract without losing them. For example, you can extend the tract for making some payments without extending others. If any part of this Contract cannot be enforced because of a law which prohibits it, all other parts can still be enforced. I agree to cooperate with you regarding any requests after closing to correct errors le concerning this Contract or the transaction and to provide any and all additional documentation deemed necessary by you to plete this transaction.

**ARBITRATION:** All disputes, claims, or controversies arising from or relating to this Agreement or the relationships which result n this Agreement, or the validity of this arbitration clause or the entire Agreement, shall be resolved by binding arbitration by one trator selected by you with my consent. This arbitration agreement is made pursuant to a transaction involving interstate ımerca, and shall be governed by the Federal Arbitration Act, Title 9 of the United States Code. Judgment upon the award rendered y be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to aive disputes. The parties understand that they have a right or opportunity to litigate disputes in court, but that they prefer to aive their disputes through arbitration, except as provided herein. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY HT THEY HAVE TO A JURY TRIAL, EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT TION BY YOU (AS PROVIDED HEREIN). The parties agree and understand that all disputes arising under case law, statutory law, I all other laws including, but not limited to, all contract, tort, and property disputes, will be subject to binding arbitration in accord h this agreement. I agree that I shall not have the right to participate as a representative or a member of any class of claimants taining to any claim arising from or relating to this Agreement. The parties agree and understand that the arbitrator shall have all wers provided by law and the Agreement. These powers shall include all legal and equitable remedies, including, but not limited to, may damages, declaratory relief, and injunctive relief. Notwithstanding anything hereunto the contrary, you retain an option to use icial or non-judicial relief to enforce a security agreement relating to the collateral secured in a transaction underlying this arbitration rsement, to enforce the monetary obligation or to foreclose on the collateral. Such judicial relief would take the form of a lawsuit. e institution and maintenance of an action for judicial relief in a court to foreclose upon any collateral, to obtain a monetary judgment to enforce the security agreement, shall not constitute a waiver of the right of any party to compel arbitration in this Agreement. :luding the filing of a counterclaim in a suit brought by you pursuant to this provision.

. **WAIVER OF JURY TRIAL:** I HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY THAT I HAVE IN ANY SUBSEQUENT LITIGATION TWEEN ME AND THE SELLER, OR ME AND ANY ASSIGNEE OF THE SELLER, WHERE SUCH LITIGATION ARISES OUT OF, IS :LATED TO, OR IS IN CONNECTION WITH ANY PROVISION OF THIS CONTRACT WHETHER THE CONTRACT IS ASSERTED AS THE ASIS FOR A CLAIM, COUNTERCLAIM OR CROSSCLAIM, OR A DEFENSE TO A CLAIM, COUNTERCLAIM OR CROSSCLAIM.

. **ADDITIONAL TERMS:**
N/A

---

**NOTICE:** ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

---

MY SIGNATURE BELOW ACKNOWLEDGES THAT I UNDERSTAND THAT PARAGRAPHS 15 AND 16 ABOVE REQUIRE BINDING ARBITRATION AND THAT I WAIVE MY RIGHT TO A JURY TRIAL IF A DISPUTE ARISES UNDER THIS CONTRACT.

YOU HAVE THE OPTION TO PROVIDE SUCH PHYSICAL DAMAGE INSURANCE AS IS REQUIRED, IN CONNECTION WITH THIS PURCHASE, EITHER THROUGH AN EXISTING POLICY OR BY A POLICY NDEPENDENTLY OBTAINED BY YOU.

BUYER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS CONTRACT.
CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

x _Kevin A. Bebley_   1-8-2000   x _Esperita Melle_   1-8-2000

'Green Tree Financial Corporation, 1997, 1998.

22333074   BESLEY - 4719775

## ASSIGNMENT BY SELLER

For good and valuable consideration, the adequacy and sufficiency of which are hereby acknowledged, Seller hereby sells, assigns, and transfers its entire right, title, and interest in the Contract and the property described therein (the "Property") to Assignee. Such assignment is made pursuant to the terms contained herein and in a separate Dealer Agreement, which is incorporated herein by reference; and pursuant to such policies, procedures, and requirements as issued by the Assignee from time to time.

IN ADDITION TO THE ABOVE, this Assignment includes that certain provision to follow, provided that, if none of the following provisions has been checked by the Seller, this Assignment shall be considered to have been checked "With Recourse": A. "Without Recourse". The assignment of the Contract is and shall be without recourse against the Seller except as provided above and in any separate dealer agreement between Seller and Assignee relating to the purchase of Contracts. B. "Limited Recourse". In the event of default of Buyer before Buyer shall have paid the number of monthly payments under the Contract as set forth below under "Limited Recourse", the Seller will, upon demand, repurchase the Contract from Assignee for the full amount remaining unpaid under the Contract. C. "Repurchase". If the Assignee repossesses the Manufactured Home, the Seller will, upon demand, repurchase the Contract from the Assignee for the full amount remaining unpaid under the Contract and agrees to purchase the Contract from the Assignee, upon demand, for the full amount then unpaid, whenever the Contract shall be in default. E. "Limited Repurchase". In the event of default of Buyer before Buyer shall have paid the number of monthly payments under the Contract as set forth below under "Limited Repurchase", the Seller will, upon demand, repurchase the Contract from the Assignee for the full amount remaining unpaid under the Contract if the Assignee repossesses the Manufactured Home.

Seller, by signing below, executes this Contract and also assigns the same to the Assignee in accordance with the foregoing provisions. The Seller's Assignment will also include that certain provision set forth above which is checked below:

C & C MANUFACTURED HOMES, INC.

Date: 1/8/2000

By: X _Lisa M. Steinbach_ (Seller)   Title: _____

( X ) A. Without Recourse   ( ) B. Limited Recourse   ( ) C. Repurchase   ( ) D. With Recourse   ( ) E. Limited Repurchase
_____ Payments                                                                                                      _____ Payments

